Filed 6/18/13  P. v. Dumas CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOHN DUMAS,<br><br>        Defendant and Appellant. | E056979<br><br>(Super.Ct.No. RIF1103905)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Gary B. Tranbarger, Judge.  Affirmed.

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

## INTRODUCTION

On April 2, 2012, an information charged defendant and appellant John Dumas with a single count of possession of marijuana in a penal institution. (Pen. Code, § 4573.6.) The information also alleged that defendant (1) suffered six prior qualifying strike convictions (Pen. Code, §§ 667, subds. (c), (e)(2)(A), 1170.12, subd. (c)(2)(A)); and (2) served five prior prison terms (Pen. Code, § 667.5, subd. (b)).

The jury found defendant guilty of count 1 on July 5, 2012. Thereafter, defendant admitted the prior strike convictions and prior prison term allegations. On August 24, 2012, the trial court denied defendant's motion to dismiss the strikes under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, and imposed an indeterminate sentence of 25 years to life in state prison and a determinate sentence of five years in state prison. That same day, a notice of appeal was filed.

Thereafter, on October 19, 2012, the trial court vacated defendant's sentence, and granted defendant's *Romero* motion with respect to five of the six prior strike convictions. Defendant was then sentenced to a term of nine years in state prison, consisting of the low term of two years (doubled) on count 1, plus one year for each of the five prior prison term allegations to run consecutive to count 1. A second notice of appeal was filed on December 3, 2012.

2

## STATEMENT OF FACTS

### A. *Prosecution*

On July 17, 2011, around 12:00 p.m., Correctional Officer Butler and his partner, Officer Gonzales, entered Dorm 303 of Facility C at the California Rehabilitation Center in Norco to conduct a random security check. The dorm consisted of a row of bunk beds on each side, with a center walkway between them. The bunk beds were numbered 1 through 25 on the side to the right of the officers and 26 through 50 on the other side, with a few bunk beds along the back wall at the end of the walkway. There were two inmates assigned to each bunk bed—one to the upper bed and one to the lower bed. Between and at the foot of each bunk bed was a locker assigned to an inmate to store his belongings. The space between bunk beds was known as the "driveway."

When Officer Butler entered the dorm, he noticed five or six inmates standing around Bunks 33 and 34, about halfway down the walkway on the left side, approximately 35 feet away. As the officers approached, the group dispersed. Officer Butler stopped one of the inmates, searched him, and then let him go. The officer then turned his attention to the area from which the inmates fled.

Defendant, an inmate, was sitting on the lower bed of Bunk 34. He was facing the right side of the bunk, when viewed from the walkway, with his feet in the driveway between Bunks 33 and 34. He was seated in the middle of the bunk, closer to the locker on the wall than to the foot of the bed. Defendant was holding, what appeared to be, a large, white object in his right hand.

3

As Officer Butler approached, defendant turned to his left, away from the officer, leaned over, and reached behind the locker in the driveway, which was assigned to the inmate in the lower bed of Bunk 33.

As Officer Butler got closer, defendant sat up holding a piece of tissue paper. Without any verbal prompting from the officer, defendant showed the officer the paper and said, "'This is what I had in my hand.'" The officer directed defendant to stand up. The officer then patted down defendant for contraband. Next, the officer searched defendant's bunk and did not find anything. Finally, the officer looked behind the locker. Between the locker and the wall, sitting on a pair of shoes, the officer found a white sock. He immediately smelled a strong odor of marijuana coming from the sock. Officer Gonzales then handcuffed defendant, and the officer escorted defendant to the prison program office.

In the office, Officer Butler opened the sock. It contained 26 individually wrapped bindles of marijuana. The total weight of the bindles was 15.6 grams. One bindle weighed 0.74 grams. In prison, half a gram, the typical quantity trafficked among inmates, sold for about $100.

*B. Defense*

Defendant testified on his own behalf. He stated that the marijuana was not his, and he was not in possession of it. Defendant testified that he had been in prison a long time, was due to be released in just a few months, had worked hard to educate himself as an electrician in prison to make a living, and lacked any motive or incentive to commit

4

another crime. At the time of the incident, defendant was assigned to the lower bed of Bunk 34. The sock belonged to an inmate known as Smoker D, who was assigned to the upper bed of Bunk 33. The night before the incident, defendant saw Smoker D with the sock. Smoker D offered to sell defendant marijuana; he declined the offer.

Defendant testified that when the officers entered the dorm on the day of the incident, defendant was sitting on his bed, facing the driveway to the left of it, between Bunks 34 and 35, and not to the right between Bunks 33 and 34, as Officer Butler claimed. He would not have used the latter driveway. Defendant's locker was to the left of his bunk and, thus, his driveway was on that side. The other driveway belonged to other inmates, and it would have violated a prison rule of respect if he had invaded that space. Defendant further testified that he had just gotten out of the shower and was getting dressed. Meanwhile, Smoker D and several other inmates were standing around the foot of Bunk 33.

Defendant testified that when the officers entered the dorm, inmates announced "'man walking'" to alert everyone of their presence. In response, Smoker D walked down the driveway between Bunks 32 and 33, reached across the lower bed of Bunk 33, and placed the sock behind the locker.

Meanwhile, defendant had to blow his nose. He obtained a wad of toilet paper from his locker to do so. Then, while still holding the paper, he reached to turn off his fan in the window at the head of his bed because he did not like the cool breeze on him. According to defendant, that was what Officer Butler witnessed defendant doing.

5

Officer Butler ordered defendant to stand up and asked him what he had in his hand. Defendant showed him the wad of toilet paper. The officer took the wad from defendant, examined it, and then returned it to him. Officer Butler then searched defendant's locker and bed. Only afterwards, did Officer Butler look behind the other locker in question and find the sock. The officer pulled the sock from behind the locker and said, "'Yeah. This is what I like.'"

Keith Kleinman, the defense investigator, inspected the area in which the drugs were found. He believed it would have been impossible for defendant to have placed the drugs behind the locker as Officer Butler claimed—from the middle of the bunk with his right hand—because of the distance between that location and the back of the locker. Defendant would have had to have been 14 inches closer to the wall and, even then, would have had a difficult time reaching that area.

## ANALYSIS

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues, and requesting this court to undertake a review of the entire record.

We offered defendant an opportunity to file a personal supplemental brief, but he has not done so. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have conducted an independent review of the record and find no arguable issues.

6

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

Acting P.J.

We concur:

KING

J.

CODRINGTON

J.